UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                      Case No. 17-cr-20332
                                      Hon. Matthew F. Leitman

CHEVIZE KING,

    Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE (ECF No. 30)**

Defendant Chevize King is a federal prisoner incarcerated at FCI Ashland in Boyd County, Kentucky. King is 46 years old and he suffers from several medical conditions, including obesity and asthma. On July 15, 2020, King moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A) ("Section 3582(c)(1)(A)"). (*See* Mot. for Compassionate Release, ECF No. 30.) For the reasons explained below, King's motion is **GRANTED**.

**I**

**A**

On May 3, 2017, King was charged in a criminal complaint with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (*See* Crim. Compl., ECF No. 1.) A federal magistrate judge issued an arrest warrant for King on the

1

same day, and King made his initial appearance. (*See* Arrest Warrant, ECF No. 2.) The magistrate judge then released King on an unsecured bond. (*See* Order Setting Conditions of Release, ECF No. 4; Bond, ECF No. 5.) A federal grand jury later indicted King on the felon in possession charge on May 17, 2017. (*See* Indictment, ECF No. 9.)

On July 17, 2017, King pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) pursuant to a Rule 11 Plea Agreement. (*See* Rule 11 Plea Agreement, ECF No. 14.) The Government and King agreed that his Sentencing Guidelines range was 63 to 78 months imprisonment. (*See id.*, PageID.27.)

On August 1, 2018, this Court sentenced King to 48 months imprisonment. (*See* Judgment, ECF No. 25, PageID.79.) The Court also sentenced King to one year of supervised release after his release from custody. (*See id.*, PageID.80.) The Court later reduced King's sentence to 43 months imprisonment. (*See* Am. Judgment, ECF No. 29, PageID.95.)

King self-reported and began serving his sentence on July 25, 2018. King's projected release date is November 10, 2021. (*See* Prisoner Data, ECF No. 40-1, PageID.257.) And he will be eligible for home confinement on July 4, 2021, less than ten months from now. (*See id.*) King has served over 60% of his 43-month sentence.

**B**

King has worked to improve himself while in custody. Most importantly, King recognized that he "h[as] a problem with abusing substances" and that "this abuse [] affected [his] legal life, family life, [and has led to him] engag[ing] in risky behaviors." (ECF No. 30-2, PageID.157.) In order to treat his drug addiction, King voluntarily enrolled in the Non Residential Drug Abuse Program at FCI Ashland. (*See id.*) King attended 100% of those sessions (*see id.*, PageID.159), and one of the providers overseeing the program reported that King has "demonstrate[d] behavior(s) indicative of treatment progress."[1] (*Id.*)

King has also enrolled in several educational and skills programs offered at FCI Ashland. (*See id.*, PageID.155.) The courses King successfully completed include classes focused on cognitive skills, personal growth and development, community resources, job skills, parenting, and wellness and nutrition. (*See id.*)

**C**

King has a number of health conditions that may increase his risk of severe consequences, including death, if he contracts COVID-19.

---

[1] King admits that his recovery from addiction has not been perfect, and in 2019, prior to entering the drug treatment program, he was cited for using alcohol while in custody. (*See* ECF No. 30-2, PageID.161.) But it does not appear that King has been cited for any major violations while has been incarcerated. Nor does it appear that he has been cited for using any other substances since August 2019.

3

First, King qualifies as obese. An individual with a body mass index ("BMI") of 30 or higher is categorized as obese. King reports that he is 5'7" and weighs approximately 225 pounds. (*See* Mot., ECF No. 30, n.21, PageID.121.) He therefore has a BMI of 35.2.[2] According to Dr. Kyle Stephens, a weight-loss surgeon at Houston Methodist Hospital, "[h]aving a BMI of 30 or higher increases a person's risk of developing a severe case of COVID-19 by 27%." Katie McCallum, *Obesity & COVID-19: Can Your Weight Alone Put You At Higher Risk?*, Houston Methodist (July 1, 2020), https://www.houstonmethodist.org/blog/articles/2020/jun/obesity-and-covid-19-can-your-weight-alone-put-you-at-higher-risk/. The CDC has also noted that "[h]aving obesity, defined as a body mass index (BMI) of 30 or above, increases your risk of severe illness from COVID-19." *See Coronavirus Disease 2019 (COVID-19): People With Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#obesity (last visited Sept. 9, 2020).

Second, King suffers from asthma. King's medical records reflect that he has been treated several times for asthma, and that he has been prescribed an albuterol

---

[2] King says that because of COVID-related restrictions at FCI Ashland, "he has been prevented from weighing himself." (See Mot., ECF No. 30, n.21, PageID.121.) King's medical records reflect that as of February 4, 2020, King weighed 213 pounds. (*See* Medical Records, ECF No. 35-1, PageID.374.) At that weight, King would have a BMI of 33.4. Given King's representation that he has been largely confined to his cell during the past five months, it is reasonable to assume that he weighs more today than he did in February.

4

inhaler for use while incarcerated. (*See* Medical Records, ECF No. 30-2, PageID.144-153.) In addition, during an April 2020 medical appointment, King reported that he had to use "his inhaler a bit more often" due to his wearing of a mask all day and the warm air inside FCI Ashland. (*Id.*, PageID.153.) King's asthma may place him at a heightened risk of severe illness or death from COVID-19. According to the CDC, "[h]aving moderate-to-severe asthma may increase your risk for severe illness from COVID-19." *Coronavirus Disease 2019 (COVID-19): People of Any Age with Underlying Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Sept. 9, 2020). Indeed, the CDC instructs medical providers treating suspected COVID-19 patients to inquire as to whether the patient suffers from asthma. *See Coronavirus Disease 2019 (COVID-19): Phone Advice Line Tool for possible COVID-19 patients*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/hcp/phone-guide/index.html (last visited Sept. 9, 2020). The Government reasonably notes there are questions about the severity of King's asthma. And it is not clear from the record that King has moderate-to-severe asthma. However, given King's history of diagnosed asthma, and his increased use of his inhaler, King's asthma is relevant to the Court's consideration of his overall medical condition.

Finally, King takes medication for hypertension. (*See* Medical Records, ECF No. 30-2, PageID.144-146.) Hypertension is a condition that renders a person more susceptible to a severe outcome from COVID-19. According to Dr. Nancy Anoruo, "new research shows that people with high blood pressure may be more likely to be hospitalized and become severely ill with the virus that causes COVID-19." Dr. Nancy M. Anoruo, *Having High Blood Pressure May Make Coronavirus More Dangerous. Here's What You Need to Know*, ABC (June 1, 2020), https://abcnews.go.com/US/high-blood-pressure-make-coronavirus-dangerous/story?id=70991996. The CDC similarly states that hypertension may increase a person's risk of severe illness from COVID-19. *See Coronavirus Disease 2019 (COVID-19): People With Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#serious-heart-conditions (last visited Sept. 9, 2020). The Government counters that King's blood pressure readings have improved while he has been in custody and that the treatment of his hypertension is a "good news story." (Gvt. Resp., ECF No. 34, PageID.337.) But as with King's asthma, even if King's hypertension is not severe, and has been improving, his history of at least some elevated blood pressure readings, and his taking of medication to control his blood pressure, is relevant to the Court's consideration of his overall health and his risk of serious illness were he to contract COVID-19.

**D**

As noted above, King is currently in custody at FCI Ashland. As of September 9, 2020, three staff members have confirmed positive test results for COVID-19. *See COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited Sept. 9, 2020). In addition, two inmates and one staff member have recovered from COVID-19 infections. *See id.*

**E**

King petitioned the warden of FCI Ashland for compassionate release on June 15, 2020. (*See* Request for Compassionate Release, ECF No. 30-2, PageID.137-138.) His request was denied on June 22, 2020. (*See* Denial Letter, ECF No. 30-2, PageID.140.)

**F**

King now moves for compassionate release. (*See* Mot. for Compassionate Release, ECF No. 30.) He argues that his increased susceptibility to a severe outcome from COVID-19, in combination with his inability to provide adequate self-care by social distancing while incarcerated at FCI Ashland, is an extraordinary and compelling reason that warrants his release. (*See id.*) The Government opposes King's motion. (*See* Resp., ECF No. 34.)

In King's motion, he highlights that he has a support system and a plan in place for re-entering the community upon his release. His wife and two children live

in a house that King owns in Flint, Michigan, and he plans on living with them. (*See* Mot. for Compassionate Release, ECF No. 28, PageID.128; *see also* Letters of Support, ECF No. 30-2, PageID.165-167.)  King also has a "guaranteed" job at his family's catering business that he plans to return to once he is released. (*Id.*, PageID.169.)

The Court held an on-the-record video hearing on King's motion on August 24, 2020.  The parties thereafter submitted supplemental briefs. (*See* Supp. Brs., ECF Nos. 40, 41, 43.)

## II

Section 3582(c)(1)(A) describes when a court may grant a prisoner compassionate release:

> [T]he court . . . may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

The "applicable policy statements" from the Sentencing Commission mentioned in Section 3582(c)(1)(A) are found in U.S.S.G. § 1B1.13.  The comment

to that section identifies the reasons for release that may rise to the level of "extraordinary and compelling":

> <u>Extraordinary and Compelling Reasons</u>.— Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> > (A) <u>Medical Condition of the Defendant</u>.—
> >
> > > (i) The defendant is suffering from a terminal illness (<u>i.e.</u>, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (<u>i.e.</u>, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> > >
> > > (ii) The defendant is—
> > >
> > > > (I) suffering from a serious physical or medical condition,
> > > >
> > > > (II) suffering from a serious functional or cognitive impairment, or
> > > >
> > > > (III) experiencing deteriorating physical or mental health because of the aging process,
> > >
> > > that substantially diminishes the ability of the defendant to provide self-care within the environment of a

correctional facility and from which he or she is not expected to recover.

(B) <u>Age of the Defendant</u>.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) <u>Family Circumstances</u>.

    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) <u>Other Reasons</u>.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

One district court has offered the following helpful explanation concerning how to apply Section 3582(c)(1)(A) in conjunction with the Sentencing Commission's guidance:

> [P]ursuant to the statutory directive in 18 U.S.C. § 3582(c)(1)(A) and in conjunction with the Sentencing Commission guidance provided in U.S.S.G. § 1B1.13, the Court must consider three issues in evaluating [a federal

10

> prisoner's] Compassionate Release application: (i) whether extraordinary and compelling reasons warrant a sentence reduction consistent with the Sentencing Commission's policy statement, (ii) whether [the prisoner] is "a danger to the safety of any other person or to the community," and (iii) whether the section 3553(a) factors "to the extent they are applicable," weigh in favor of a sentence reduction. *United States v. Bellamy*, 2019 WL 3340699, at *2 (D. Minn. July 25, 2019); [*United States v.*] *York*, 2019 3241166, at *5 [E.D. Tenn. July 18, 2019]; *United States v. Beck*, 2019 WL 2716505, at *7 (D.N.C. June 28, 2019); *United States v. Johns*, 2019 WL 2646663, at *3-4 (D. Ariz. June 27, 2019); [*United States v.*] *McGraw*, 2019 WL 2059488, at *3 [S.D. Ind. May 9, 2019].

*United States v. Wong Chi Fai*, 2019 WL 3428504, at *2 (E.D.N.Y. July 30, 2019).

### III

### A

The Court finds that the combination of (1) King's heightened susceptibility to a severe outcome from COVID-19 (due primarily to his obesity, but also due to the combination of his obesity, asthma, and hypertension[3]) and (2) King's inability to practice self-care and to follow CDC guidelines while in custody amount to extraordinary and compelling reasons that support King's compassionate release.

---

[3] As discussed in more detail above, there is a reasonable dispute about the severity of King's asthma and hypertension and whether those conditions, standing alone, would be sufficient to establish an extraordinary and compelling reason to support King's compassionate release. However, the Court concludes that King's asthma and hypertension when considered as a whole and in combination with King's obesity, are sufficient to place King at an increased risk for a severe outcome were he to contract COVID-19.

11

The Government does not contest the Court's conclusion.  Indeed, the Government concedes that because King's obesity subjects him to a "heightened risk" for severe illness from COVID-19, "King has satisfied the first eligibility threshold for compassionate release during the pandemic." (Gvt. Resp. Br., ECF No. 34, PageID.341.)

Thus, as the Government acknowledges, extraordinary and compelling circumstances support King's compassionate release.

### B

For the reasons explained below (in the context of the Court's discussion of the Section 3553(a) factors), the Court concludes that releasing King would not pose a danger to the safety of the community or any of its members.

### C

The Court finds that releasing King would be consistent with the factors listed in 18 U.S.C. § 3553(a).

The nature and circumstances of King's offense are undoubtedly serious. *See* 18 U.S.C. § 3553(a)(1).  Thus, this factor may weigh against granting compassionate release.  But the remaining Section 3553(a) factors weigh in favor of compassionate release.

King's personal history and characteristics support release.  One of King's most relevant personal characteristics is his vulnerability to COVID-19 due to the

combination of his medical conditions, and that vulnerability supports release now. As discussed above, the Government concedes that King's obesity places him at heightened risk for a severe outcome if he were to contract COVID-19. And King's other medical conditions – including hypertension and asthma – when considered in conjunction with his obesity, may place him at increased risk. In addition, King's substantial efforts to improve himself and be a contributing member to his environment demonstrate positive developments in King's character. Indeed, there is a real reason to believe that, based on King's post-arrest conduct, King has "turned the corner," accepted the need to change his ways and past behaviors, and is not the same person he was when he committed the offense for which the Court sentenced him. (*See*, *e.g.*, ECF No. 36.) Among other things, King voluntarily enrolled in the Non Residential Drug Abuse Program in order to treat his drug addiction issues, and the reports from that program show that he has "demonstrate[d] behavior(s) indicative of treatment progress." (ECF No. 30-2, PageID.157-159.) He also has successfully completed several educational programs while incarcerated, including courses designed to improve his personal development and growth. (*See id.*, PageID.155.)

The Court fully acknowledges that King's criminal history includes several drug-related and gun-possession offenses, and the Government makes a reasonable argument that that history weighs against release. But the Court views this history

in light of King's acknowledged addiction to illegal drugs. King's offenses strike the Court as offenses that were propelled by King's addiction – an addiction that King has worked hard to treat while in custody. Thus, the Court concludes that King's more recent history during his incarceration and his other personal characteristics outweigh the negative influence of his criminal history.

Likewise, the goal of imposing sufficient punishment would be satisfied by releasing King now. *See* 18 U.S.C. § 3553(a)(2)(A). King has served over 60% of his sentence. He is set to be released from custody in just 15 months and is eligible for home confinement in less than 10 months. He has already suffered meaningful punishment for his crimes. Moreover, King's counsel has represented to the Court that because of COVID-related policies at FCI Ashland, King has been subject to stricter-than-normal terms of incarceration. For example, counsel has represented that beginning on April 1, 2020, FCI Ashland instituted a "lockdown" in an effort to mitigate the spread of COVID-19. (*See* Supp. Br., ECF No. 40, PageID.611.) The lockdown limited (or eliminated) prisoner "access to phones, computers, [and] law library materials. The chow hall and gym were also closed. Inmates could no longer work [and there was] no recreation time, no commissary, and no [Bureau of Prison] programing." (*Id*.) And while FCI Ashland has slowly started to lift this lockdown, and inmates have more freedom of movement and the ability to engage in work and recreational activities than they did during the spring and summer, several

14

restrictions will remain in place for the foreseeable future. (*See id.*, PageID.612.) King says that these restrictions have "taken a toll" on him both "mentally and physically." (*Id.*, PageID.612-613.) Had the Court known when it sentenced King that he would be subjected to such additional restrictions while incarcerated, it may have sentenced him to a shorter term of imprisonment. Finally, the Court will require that King be subject to six months of home confinement upon his release, and he will be subject to electronic monitoring during that period. This meaningful additional punishment, in addition to the 26 months he has spent in custody, is sufficient punishment for the crime he committed.

In addition, releasing King is consistent with the goal of deterrence. King has served a meaningful sentence in prison – one that, as described above, included a significant period on "lockdown" – and he will be subject to an additional six months of home confinement with electronic monitoring upon his release. King's custodial sentence and his additional period of home confinement are sufficient to achieve both general and specific deterrence. Moreover, the Court is impressed by King's re-entry plan and by the economic support that is available to him upon release (including a guaranteed job at his family's catering company). The family and financial support that will be available to King upon release diminishes the risk of him re-offending and renders additional time in custody unnecessary to achieve specific deterrence.

15

Next, releasing King to home confinement (with electronic monitoring) will not subject the public to a serious risk of harm. *See* 18 U.S.C. § 3553(a)(2)(C). King's dedication to bettering himself while incarcerated and his recognition that he had an addiction to drugs and needed to seek treatment for that addiction suggest that it is unlikely that he will reoffend. The Court will also require that King continue to seek drug treatment while on supervised release, and that treatment will further decrease the likelihood that he reoffends. It also will require him to remain at home with electronic monitoring for a period of six months. Finally, King was out on bond for a significant period of time before he was sentenced and reported for his term of imprisonment. And while he did test positive for the drugs to which he was addicted during that period, there was no indication that he was engaged in any activities that put the public at risk. That history supports the conclusion that releasing King will not subject the public to a serious risk of harm.

Furthermore, the most effective way to deliver medical care to King is outside of FCI Ashland where he can receive needed monitoring and treatment of his medical conditions without facing an immediate threat of COVID-19. *See* 18 U.S.C. § 3553(a)(2)(D).

Finally, King's release will not produce an unwarranted sentencing disparity because it accounts for his unique medical circumstances. *See* 18 U.S.C. § 3553(a)(6).

## IV

Accordingly, for the reasons explained above, **IT IS HEREBY ORDERED** that King's Motion for Compassionate Release (ECF No. 30) is **GRANTED**.

The custodial portion of King's sentence is reduced to time served. He shall immediately be released from custody. Upon his release, King shall travel directly by automobile from FCI Ashland to the home that he owns with his wife in Flint, Michigan. King and all others with him in the automobile shall wear face masks during the drive. For the first 14 days after King arrives in Flint, he shall remain inside his house. And for the same 14-day period, he shall quarantine within the house – meaning he shall remain in a room that is separate and apart from all other residents of the house to the extent possible. And when, during the 14-day quarantine period, it is unavoidable for him to be in a separate room, he shall wear a face mask. Finally, King shall contact his supervising probation officer within 48 hours after he first arrives at his home.

Also, upon King's release from custody, King shall begin serving the one year of supervised release that the Court imposed in King's Amended Judgment. (*See* Am. Judgment, ECF No. 20, PageID.96.) The Court adds as a condition of that supervised release that King shall be subject to home confinement (with electronic monitoring) at his residence for six months and, during that period of home confinement, shall not leave that residence other than for employment, job training,

religious services, medical and/or mental health appointments, treatment programs, appointments with counsel, and/or other activities approved in advance by his supervising probation officer. (He may not leave the residence at all during the 14-day quarantine period.) In all other respects, King's original sentence remains unchanged.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: September 10, 2020

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 10, 2020, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9761